KANE, APPELLEE, *v.* FORD MOTOR COMPANY, APPELLANT, ET AL.

(Nos. 47404 and 47725 — Decided June 11, 1984.)

*Richard C. Alkire* and *Joel Levin,* for plaintiff-appellee.

*Robert H. Gillespy* and *Howard J. C. Nicols,* for defendant-appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mitchell A. Stern,* for defendants-appellees Bureau of Workers' Compensation and Industrial Commission.

PATTON, J. This is a consolidation of actions arising from separate judgments entered by the Court of Common Pleas of Cuyahoga County. For the purposes of clarity, the two contested determinations upon which our review is sought shall be discussed separately.

In April 1977, plaintiff-appellee herein, Joan Kane, was injured while at work and sought workers' compensation benefits. Kane's claim was denied by the Industrial Commission. She appealed to the common pleas court, pursuant to R.C. 4123.519, and was accorded a trial *de novo.* Appellee claimed that a preexisting medical condition, multiple sclerosis, was substantially aggravated by an injury received at work. Specifically, Kane claimed that a blow to her left leg, inflicted by a fellow worker driving a tow motor, caused her leg to be pinned between metal racks pushed forward by the tow motor and assembly line, thereby causing her latent multiple sclerosis condition to become substantially aggravated. Within one week of this accident, appellee began to display marked symptoms of multiple sclerosis; within four months of the accident, her condition was diagnosed as multiple sclerosis.

Upon appeal, the appellant, Ford Motor Company, has assigned six errors for this court's review.

I

Initially, appellant takes exception to the trial court's allowance of the testimony of appellee's expert witness, Dr. William R. Bauer, without first passing on appellant's motion for exclusion of the same. Additionally, appellant argues that Dr. Bauer's testimony was improper as it was based upon unfounded medical theories concerning the develop-

ment of multiple sclerosis. Appellant argues that it should have been permitted to counter Bauer's testimony by introducing testimony concerning the 1981 Bamford Study, "Trauma as an Etiologic and Aggravating Factor in Multiple Sclerosis."[1]

As established in the case of *Solon* v. *Solon Baptist Temple* (1982), 8 Ohio App. 3d 347, at paragraph two of the syllabus: "* * * Where the court fails to rule on an objection or motion, it will be presumed that the court overruled the objection or motion." In the instant matter, we must presume that the trial court, in failing to respond to appellant's motion *in limine,* impliedly overruled the same.

With regard to the contested testimony of Dr. Bauer, we note that it is perfectly proper for an expert to rely upon "facts or data * * * perceived by him," Evid. R. 703, as well as to draw upon knowledge gained from other experts in the field, whether this knowledge was communicated orally or in writing. This information forms the "scientific, technical, or other specialized knowledge" which qualifies the witness as an expert. Evid. R. 702. See *Hurley* v. *Connor* (March 22, 1984), Cuyahoga App. No. 47187, unreported.

In the instant matter, Dr. Bauer did not quote specific statements of other experts. His testimony merely referenced these studies as providing a partial basis for his knowledge on the disease of multiple sclerosis and hence his opinion on appellee's case. Moreover, appellant failed to object to or dispute the qualifications of Dr. Bauer as an expert at trial. We therefore conclude that

the admission of Dr. Bauer's presently contested testimony was consistent with Evid. R. 702 and 703 and, accordingly, properly allowed by the trial court.

Regarding appellant's argument concerning the trial court's refusal to allow specific reference and quotation to be presented from the 1981 Bamford Study, we conclude that the contested quotations were properly excluded. Ohio has not adopted the "learned treatise" exception to the hearsay rule, as have the federal courts (Fed. R. Evid. 803[18] ). A fine line must therefore be drawn between admission of an expert opinion incorporating such medical studies from direct quotation, as appellant sought in the instant matter. Direct quotation is not permitted, and exclusion of same was proper.

We note in passing, however, that while direct quotations from the Bamford Study were excluded, appellant's witnesses were able to provide their opinion on the validity of medical literature relied upon by Dr. Bauer, as well as their opinion on the effect of trauma as a cause or aggravation of multiple sclerosis in light of the recent 1981 study and its findings. This error and supporting arguments raised are therefore without merit.

It is next argued that the trial court erred in failing to grant appellant's motion for a directed verdict. Specifically, appellant contends that appellee failed, as a matter of law, to sustain her burden of proving that her multiple sclerosis existed prior to April 6, 1979 and that her work-related injury substantially aggravated her multiple sclerosis.[2] We disagree.

---

[1] "The trial court erred in permitting Dr. Bauer to testify because the court had failed to rule on an outstanding written motion to exclude that doctor's testimony for the reason that he had refused to answer questions at deposition.

"The trial court erred in permitting Dr. Bauer to testify based solely on unfounded

theories and in striking the rebuttal testimony of Dr. Goren regarding the recent controlled studies which prove that trauma does not cause or aggravate multiple sclerosis."

[2] "The trial court erred in not granting directed verdict for defendant-appellant because plaintiff did not sustain her burden

To prevail on a motion for a directed verdict, it is necessary for the trial court in construing the evidence most strongly in favor of the party against whom the motion is directed, to find that upon any determinative issue, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party. The court shall then sustain the motion and direct a verdict for the moving party as to that issue. Civ. R. 50(A)(4).

In review of the record *sub judice,* we note that Dr. William Bauer, Director of Neurology and Electroencephology at the Euclid General Clinic, testified concerning the cause or origin of multiple sclerosis, whether appellee had multiple sclerosis prior to her April 6, 1979 injury, and whether such injury substantially aggravated appellee's multiple sclerosis condition.

The testimony of Dr. Bauer established that the disease of multiple sclerosis, as it is presently understood, is caused by a virus which affects the myelin sheath of the nervous system. According to Dr. Bauer, the illness is not genetic, but environmental, and is caused when the virus comes into contact with an individual sometime before the age of twenty. Though the individual has this virus before the age of twenty, it will remain dormant until some point between the ages of twenty and forty, when unmasked either spontaneously or by a factor in the environment, such as trauma.

When questioned on whether appellee's multiple sclerosis existed prior to April 6, 1979, Dr. Bauer responded affirmatively:

"Q.  * * * Doctor, do you have an opinion, based upon reasonable medical certainty and probability, as to whether Joan Kane's condition for which you diagnosed the multiple sclerosis existed prior to April the 6th, 1979? First of all, do you have an opinion?

"A.  Yes, I have an opinion.

"Q.  What is that opinion, Doctor?

"A. My opinion is —

"THE COURT: Answer.

"A.  — that the illness that she has, the multiple sclerosis was latent prior to that injury, as I have described here today.

"Q.  Now, Doctor, what is the basis of that opinion?

"A.  The basis of that opinion is the information that I have given to you here today on multiple sclerosis, which is the sum total of my time spent understanding this illness, directly working with people in the field, in the research, the sum total of the literature that I review, and my own patients, and based upon that experience and the knowledge of this patient, it is my opinion that this illness was latent prior to that and became unmasked with this injury. That is my opinion. And there are also other cases in the literature in all languages to substantiate my belief."

Dr. Bauer further testified that based upon a reasonable degree of

---

of proving that the alleged multiple sclerosis condition existed prior to April 6, 1979, and there were no facts in evidence from which such an inference could be drawn.

"The trial court erred in not granting directed verdict for defendant-appellant because plaintiff did not sustain her burden of proving that the April 6, 1979 injury substantially aggravated her multiple sclerosis disease in that she failed to present any medical or other competent evidence showing substantial aggravation.

"The trial court erred in not striking the medical testimony of plaintiff's expert where that testimony placed inference upon inference and was unsupported by facts in evidence.

"The trial court erred in not granting directed verdict for defendant-appellant because claimant failed to establish that the cause of the aggravation which she alleged was more probable than other possible causes for which defendant-appellant was not responsible."

medical certainty and probability, there existed a direct cause and effect relationship between appellee's April 6, 1979 injury (trauma) and the aggravation of appellee's multiple sclerosis:

"Q. Now, Doctor, do you have an opinion, based upon reasonable medical certainty and probability, as to whether Joan Kane's condition of multiple sclerosis was substantially aggravated, accelerated or worsened by reason of the accident and event of April the 6th, 1979?

"* * *

"A. I have an opinion.

"Q. Doctor, what is that opinion?

* * *

"A. It is my opinion that the injury unmasked this illness and aggravated the multiple sclerosis, as I have described for you here today.

"Q. Doctor —

"Q. — what is the basis of your opinion?

"A. The basis of my opinion, again, is the knowledge of my training, working with this illness, the world's literature, my own experiences, other similar cases, and the literature which cites specific examples similar to this patient in which this has occurred. That is my opinion and that is my belief."

Appellant presently argues that the expert opinion rendered by Dr. Bauer was insufficient as a matter of law with regard to the preexistence of multiple sclerosis prior to appellee's injury and its aggravation thereof, as such opinion was not supported by facts within his personal knowledge, or by those established by other evidence. We disagree.

Dr. Bauer provided testimony on multiple sclerosis based upon approximately ten years of experience as a neurologist and predicated such testimony on his own personal experience and research on the disease of multiple sclerosis, on the knowledge obtained from other experts in the field, from the treatment of other patients and from information obtained from medical literature on this disease. He opined that multiple sclerosis is virally contracted before the age of twenty, with symptoms appearing between the ages of twenty to forty. Appellant's expert witnesses did not dispute this testimony concerning the origins of multiple sclerosis; to the contrary, Dr. Goren agreed that multiple sclerosis is a latent disease.

All testifying experts agreed that scientific literature recognizes a relationship between trauma and multiple sclerosis. Predicated upon the latent nature of multiple sclerosis, the recognized though disputed relationship between trauma and the onset of multiple sclerosis symptoms, and his own personal examination of the appellee, Dr. Bauer provided his opinion, based upon a reasonable medical certainty, that Kane had contracted multiple sclerosis prior to her work-related injury of April 6, 1979. In construing this evidence in a light which is most favorable to appellee, we conclude that appellant was not entitled to a directed verdict.

We now turn to the issue of whether appellee sustained her burden in proving that her "condition" was substantially aggravated as a result of the April 6, 1979 injury to her leg. As adduced from the record, prior to April 6, 1979, Kane was in reasonably good health with no history of any medical problems of any great import. Within one week of her injury, however, she began to experience an involuntary jerking in her left leg, as well as a tingling and numbness in that leg. Within one month from the date of her injury, she began to experience a loss of vision, uncontrollable frequency of her bladder and a numbness on her entire right side. Kane testified that from the date of her injury, her physical health substantially worsened.

The testimony of Dr. Bauer, established that he diagnosed appellee's multiple sclerosis condition in August 1979. When questioned concerning whether he

had an opinion based upon a reasonable medical certainty and probability as to whether appellee's condition of multiple sclerosis was substantially aggravated by her injury, Dr. Bauer responded:

"It is my opinion that the injury unmasked this illness and aggravated the multiple sclerosis as I have described for you here today."

Though appellant argues that as Dr. Bauer failed to recite the magic words "substantial aggravation," appellee failed as a matter of law to prove that her injury substantially aggravated her multiple sclerosis condition, we remind appellant that "substantial aggravation" in the testimony of a physician are not magic words without which a disabled plaintiff must be denied recovery. As long as the evidence can establish a substantial causal relationship that a preexisting condition was substantially aggravated by a work-related injury, recovery may be made. See, generally, *McKee* v. *Electric Auto-Lite Co.* (1958), 168 Ohio St. 77 [5 O.O.2d 345]; *King* v. *Republic Steel Corp.* (Dec. 17, 1981), Cuyahoga App. No. 43573, unreported.

In construing the evidence presented to the trial court in a light most favorable to the nonmoving party, we find that appellee suffered no multiple sclerosis symptoms prior to April 6, 1979. Within one week of her injury, however, she began to experience a number of such symptoms, her condition growing progressively worse from that point in time up to and including the period in which she was diagnosed by Dr. Bauer as having multiple sclerosis.

Appellee testified that her physical condition substantially worsened after April 6, 1979. Dr. Bauer testified that appellee's injury proximately caused the unmasking of the disease's symptoms, hence aggravating the multiple sclerosis condition.

Clearly this testimony, which established appellee's physical deterioration from good health to the physical manifestations and shortcomings of multiple sclerosis, occurring initially within the period of one week after Kane's injury, and becoming progressively worse over the ensuing months, constituted sufficient evidence to withstand appellant's motion for a directed verdict on the issues of substantial aggravation and causation. Appellee established a prima facie case entitling her to recovery. The trial court correctly refused appellant's motion for a directed verdict.

It is finally argued that Dr. Bauer's opinion regarding the substantial aggravation of appellee's condition was improper because it required the placement of an inference upon an inference in order to reach that opinion. Specifically, appellant argues that Dr. Bauer was required to infer that appellee had multiple sclerosis prior to April 6, 1979 (first inference) and that such condition was substantially aggravated by her work-related injury (second inference).

We shall not belabor this issue. Dr. Bauer's testimony concerning Kane's medical condition prior to the date of her work-related injury established the pre-existence of appellee's multiple sclerosis. From this fact, the inference could be properly made that her condition was substantially aggravated by the blow inflicted to her left leg. Appellant's argument is incorrect, and this raised error is without merit.

## II

Turning now to the second raised appeal, the appellant takes exception to the trial court's award of costs to appellee, granted after an appeal on the merits had been perfected in this court. In support of this position, appellant raises the following two errors for review:

"The trial court lacked subject matter jurisdiction to grant claimant's motion to tax costs because the prior filing of a notice of appeal divested the trial court of jurisdiction to take any action

inconsistent with the power of this appellate court to review and reverse the decision appealed from.

"The trial court lacked statutory authority under Ohio Revised Code Section 4123.519 to grant attorney's fees in the manner and amount awarded."

It is a well-recognized principle that once an appeal has been perfected, the trial court loses jurisdiction over the matter, pending the outcome of the appeal. See, generally, *Vavrina* v. *Greczanik* (1974), 40 Ohio App. 2d 129, citing *State, ex rel. Continental Cas. Co.* v. *Birrell* (1955), 164 Ohio St. 390 [58 O.O. 187]; *In re Mahoning Valley Sanitary District* (1954), 161 Ohio St. 259 [53 O.O. 140]; *State, ex rel. Austin,* v. *Shaffer* (App. 1956), 78 Ohio Law Abs. 417; *Sullivan* v. *Cloud* (1939), 62 Ohio App. 462 [16 O.O. 152]. This principle is limited to the extent that it is the area pertaining to the final order, judgment or decree sought to be reviewed which is divested from the trial court upon appeal. As to the remainder of the cause, the lower court retains all jurisdiction not inconsistent with that of the appellate court to review, affirm, modify or reverse a final order, judgment or decree from which the appeal has been perfected. *In re Kurtzhalz* (1943), 141 Ohio St. 432 [25 O.O. 574], paragraph two of the syllabus, citing with approval *Goode* v. *Wiggins* (1861), 12 Ohio St. 341. See, also, *Vavrina* v. *Greczanik, supra,* at 132, and cases cited therein.

In the instant matter, an appeal on questions of law concerning appellant's liability to appellee under the Workers' Compensation Act was perfected to this court on August 26, 1983. On October 11, 1983, the trial court entered the following journal entry:

"Plaintiff's motion to tax all costs is granted. To become effective upon final disposition of all appeals." R.C. 4123.519 specifically authorizes the trial court to award a successful claimant costs which are to be taxed against the employer or the Industrial Commission. Such costs include attorney fees.

As the determination of such costs was not directly related to the area or issues on appeal, *i.e.,* appellant's right to a directed verdict in light of the evidence presented, the trial court's award of attorney fees to appellee, pending our determination of this matter, was not improper or without jurisdiction.

We note, however, that the contested entry provides that: "Plaintiff's motion to tax *all* costs is granted." (Emphasis added.) This entry, at first blush, appears to allow costs exceeding the $1,500 limitation set by R.C. 4123.519. As this clearly is not authorized by the provisions of the Ohio Revised Code, we remand this matter to the trial court for a clarification of that order. See, generally, *Sorci* v. *General Motors Corp.* (1983), 13 Ohio App. 3d 223.

*Judgments affirmed and causes remanded.*

MARKUS, P.J., and ANN McMANAMON, J., concur.