OPINION
Defendant-appellant, Thomas C. Lawson, Sr., was indicted by a Butler County Grand Jury on one count of felonious assault, with a firearm specification, in violation of R.C.2903.11(A)(2) and 2941.145 and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). A jury trial was held on November 4, 5, and 6, 1999. At trial, appellant and the victim, Denny Tyree ("Tyree"), presented different versions of the events leading to the charges.
Tyree testified that he and appellant's son, Thomas Lawson Jr. ("Lawson Jr."), went to appellant's house after being invited to come over and "party." Tyree stated that he, appellant, Lawson Jr., and appellant's wife, Linda Lawson, spent the evening drinking, smoking marijuana, and playing chess. According to Tyree, he won all of the chess games, which caused appellant to become angry and hostile with him. Appellant swung and hit Tyree, who swung back. Lawson Jr. and Linda Lawson intervened to break up the fight. Tyree and Lawson Jr. walked out on the porch and Tyree waited for Lawson Jr., who was talking with appellant's daughter, to drive him home. Tyree testified that while he was walking to the car, appellant came out of the house with a gun, aimed the gun at him, and shot him three times.
According to appellant, Lawson Jr. and Tyree showed up uninvited at his home. The two had been drinking and brought beer with them. Appellant testified that Tyree began bragging about his Taekwondo ability and about his gang experience. Tyree made derogatory comments about the family's ability to play chess after noticing a chess set on the kitchen table and challenged appellant to play a game. According to appellant, he won one game and Tyree won the second game. Appellant testified that Tyree made sexual advances toward his daughter, and when appellant and his wife asked Tyree to leave, he refused. Appellant and Tyree fought for several minutes and were eventually separated by Lawson Jr. and Linda Lawson. Appellant claimed that Tyree pulled out a gun. Appellant testified that he rushed over to grab the gun from Tyree. Appellant and Tyree struggled over the gun and were pushed out on the porch as they were fighting. As they fought, appellant claims Tyree was screaming about how he was going to kill them all. Appellant testified that during the fight, the gun went off and Tyree was shot. Appellant stated that he then left the scene because he was scared, but claimed he did not take the gun with him.
A jury found appellant guilty of a lesser included offense of aggravated assault (R.C. 2903.12[A]) with a firearm specification, and guilty of having weapons while under disability.
Appellant appeals his conviction and raises the following two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FAILING TO ADEQUATELY INSTRUCT THE JURY ON APPELLANT'S DEFENSE OF FAMILY THEREBY DEPRIVING HIM OF A VALID AFFIRMATIVE DEFENSE ARGUMENT.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN PERMITTING ADMISSION OF HEARSAY EVIDENCE AS WELL AS PERMITTING IMPROPER EXPERT TESTIMONY.
In his first assignment of error, appellant contends that he was entitled to a full and adequate jury instruction on "defense of family," an affirmative defense. Appellant argues that the trial court only mentioned defense of family one time and that incorporating the defense into the general self-defense instruction is insufficient.
The Ohio Supreme Court has defined the situation under which a person is entitled to use force to protect family members as follows:
 If a person in good faith and upon reasonable ground believes that a family member is in imminent danger of death or serious bodily harm, such person may use reasonably necessary force to defend the family member to the same extent as the person would be entitled to use force in self-defense.
State v. Williford (1990), 49 Ohio St.3d 247, paragraph one of the syllabus.
A review of the transcript shows that the trial court discussed proposed jury instructions with counsel before the instructions were read to the jury. Counsel for appellant stated that the instructions should include an instruction on defense of family. The trial court reviewed the jury instructions and agreed that the words "that he believed he or his family was in immediate danger" should be added. The following instruction was then read to the jury:
 To establish self defense the defendant must prove he was not at fault in creating a situation giving rise to the fight at issue in this case, and he had reasonable grounds to believe and an honest belief that he or his family were in immediate danger of death or great bodily harm, and that his only means of escape of such danger was by the use of deadly force, and that he had not violated any duty to escape or withdraw to avoid the danger.
The trial court then inquired out of the hearing of the jury as to whether counsel had any additions, corrections, or deletions to the instructions. Counsel for both sides responded that they did not.
Jury instructions must contain "all matters of law necessary for the information of the jury in giving its verdict." R.C.2945.11. The trial court should give a requested jury instruction if the proposed instruction is a correct statement of law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction. Murphyv. Carrolton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. An appellate court reviewing a trial court's decision regarding a jury instruction must determine whether the trial court abused its discretion under the facts and circumstances of the case. Statev. Wolons (1989), 44 Ohio St.3d 64, 68.
Since he claimed Tyree threatened his family, appellant was entitled to a jury instruction to the effect that he was entitled to use force to defend his family members to the same extent he would be entitled to use force in self-defense. The transcript shows that the trial court adequately instructed the jury that self-defense extends to family members. Therefore, appellant has not shown error or an abuse of discretion with respect to the jury instruction. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the trial court made numerous erroneous evidentiary rulings and that the cumulative effect denied him his right to a fair trial. Appellant has raised a number of arguments under this assignment of error and each are addressed below.
Trial courts have broad discretion in the admission of evidence, and an appellate court may not reverse a trial court's decision with respect to admission of evidence unless the trial court clearly abused its discretion and the defendant has been materially prejudiced as a result. State v. Maurer (1984),15 Ohio St.3d 239, 265. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Appellant first argues that the court erred in allowing hearsay testimony. Specifically, appellant argues that the court should not have allowed the testimony of a police officer on the scene regarding statements Tyree made to the officer because such statements were inadmissible hearsay.
At trial, a police officer testified that he arrived at the scene of the shooting and ran up to Tyree, who was lying on the ground, holding his stomach and in a great deal of pain. The officer stated that Tyree was scared, nervous and kept asking the officer to help him and that he felt like he was dying. The officer testified that he tried to calm Tyree down and asked him what had happened. The officer testified that Tyree said that appellant shot him. Later in his testimony, the officer discussed how he secured certain evidence based on statements made by Tyree that the cause of the incident was a disagreement related to a chess game.
The trial court permitted the officer to testify regarding Tyree's statements as to the identity of the shooter and the cause of the incident over defense counsel's objection. The trial court gave a limiting instruction to the jury that they were to consider the statements of the police officer regarding the cause of the incident only to show why the officer collected certain evidence. The jury was instructed that any evidence as to the cause of the shooting should come from the parties involved.
Hearsay is an out of court statement other than one made by the defendant while testifying at the trial offered into evidence to prove the truth of the matter asserted, Evid.R. 801(C), and is generally not admissible. Evid.R. 802. However, Evid.R. 803(2) provides an exception to the hearsay rule when the statement relates to a "startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The police officer testified regarding Tyree's condition and about trying to calm him down. While the officer's statements regarding what the victim told him were hearsay, they fall under the excited utterance exception to the hearsay rule and were admissible at trial. Therefore, we find no error with respect to admission of the police officer's statements.
Appellant next argues that the trial court erred by allowing a firearms expert to testify regarding information the expert received from a gun manufacturing company as to when bullets found in appellant's house were manufactured. Appellant argues that this testimony prejudiced him because it dated the bullets in an attempt to associate the bullets with appellant through his age. At the time of trial, Tyree was twenty-three and appellant was fifty years old.
At trial, Chris Monturo, a firearms and tool mark examiner employed by the Miami Valley Regional Crime Lab, testified about his examination of bullets taken from Tyree at the hospital and bullets found in appellant's house. Monturo described his qualifications and experience in the area of firearm identification and was found qualified to testify as an expert witness. Monturo testified that he determined the copper finish on the bullets was not common, and that the bullets were from an older design and manufacturer. Monturo stated that he spoke with a technical advisor at the manufacturer's plant who informed him that the company ceased to manufacture that type of bullet in 1974.
A witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony. Evid.R. 702(B). The testimony of an expert witness is based on reliable scientific, technical or other special information. Evid.R. 702(C). An expert's opinion may be based on facts or data perceived by him. Evid.R. 703. It is knowledge obtained from reading and learning from outside sources which qualifies a witness as an expert. State v. Webb (Nov. 24, 1993), Jackson App. No. 671, unreported. An expert may "draw upon knowledge gained from other experts in the field, whether this knowledge was communicated orally or in writing." Kane v. FordMotor Co. (1984), 17 Ohio App.3d 111, 112. It is this information which "forms the `scientific, technical or other specialized knowledge' which qualifies the expert as a witness." Id.
As an expert witness, Monturo testified that he determined the bullets in this case were not common and were of an older design. He also testified that he determined from the manufacturer that they were not made after 1974. The trial court did not err in admitting these statements as they were within the scope of expert testimony and were based upon the specialized knowledge of experts in the firearm field.
Appellant next argues that he was prejudiced by the admission of the testimony of a paramedic at the scene who stated that he thought Tyree's injuries were serious and that there were possible internal injuries. We disagree. While the paramedic's testimony regarding the degree of the victim's injuries was speculative, there was no prejudice to appellant since the exact nature of the injuries were developed through further testimony and by the admission of hospital records.
Appellant next argues that the trial court erred by admitting diagrams drawn by officers at the scene which were not drawn to scale. Appellant claims that because the sketches did not accurately reflect the amount of space inside the house, he was prejudiced because the drawings "misled the jury about the nature of the house" and "the fight itself."
The trial court admitted sketches drawn by police officers of the interior of the house and a diagram of the yard, porch, and house. However, the jury was aware that the drawings were not to scale since the officer who drew the sketches specifically testified that they were not drawn to scale. In addition, the jury had the opportunity to review actual photographs of the areas sketched in the drawings which clarified the precise distance between objects. We find no error in the admission of the sketches. They were not prejudicial, confusing, or misleading to the jury.
Appellant next alleges that the trial court erred by admitting a videotape which showed the presence of boxing gloves, a punching bag, and workout equipment in appellant's house. Appellant argues that by showing these items, the state attempted to create an inference that appellant had a violent, aggressive nature and had a predisposition toward violence, which is inadmissible character evidence under Evid.R. 404.
The videotape was taken by a police detective at the scene to document the condition of the home when the police arrived and to document possible evidence at the crime scene. The tape was not edited, dubbed, or altered and was shown in its entirety at trial. The tape documented the crime scene and the boxing gloves, punching bag, and workout equipment were a small part of the scene videotaped. The admission of the videotape did not unfairly prejudice appellant, and we find no error in the court's decision to allow the jury to view the tape.
Appellant next argues that the court erred by allowing testimony regarding a .38 handgun which was never connected to the case. A police detective testified that although he searched the surrounding area, the gun used in the shooting was never recovered. The detective also testified that about six months later a .38 caliber gun was found in a sewer about a mile away from the scene, but was rusted and too badly deteriorated to obtain the serial number or any other type of identification from the weapon. On cross-examination, the detective stated that there was no proof the gun was connected to the case and if it were the same weapon, it would have had to deteriorate to the point of being unrecognizable in only six months.
The weapon used in the shooting was a .38 caliber and was never found. The fact that a .38 caliber gun was found a mile away six months later, but could not be scientifically connected to the shooting, was relevant to the case. It was up to the jury to determine the weight to give this evidence. We thus find that the trial court did not err by allowing this testimony.
Finally, appellant argues he was deprived of a fair trial when the prosecutor committed misconduct in his questioning of appellant's daughter, by mischaracterizing evidence, by introducing improper rebuttal evidence, and by repeatedly badgering appellant's daughter about statements she made to the police on the night of the shooting. The test for prosecutorial misconduct is whether the actions of the prosecutor were improper and if so, whether the conduct substantially prejudiced the defendant. State v. Lott (1990), 51 Ohio St.3d 160, 165.
On direct examination, appellant's daughter testified that on the night of the shooting Tyree made sexual advances toward her, became hostile when asked to leave, and pulled a gun out and threatened her family. She indicated she was scared and afraid for her life. On cross-examination, the prosecutor attempted to establish that appellant's daughter had the opportunity, but did not give her version of the incident to the police. The prosecutor asked several questions regarding whether appellant's daughter told the police each of the specific statements she made on direct examination. These questions were not misleading to the jury, and appellant's daughter had the opportunity to explain that she did not want to make a statement about what happened because she did not want to incriminate herself or any other family members.
The prosecutor presented the testimony of a police detective as a rebuttal witness and asked questions regarding the detective's interview with appellant's daughter. Specifically, the detective was questioned as to whether appellant's daughter told him about several things she testified to on direct examination. These things included hearing gunshots, the argument, sexual advances by Tyree, and the struggle for the gun. The detective stated that appellant's daughter did not tell him any of these things when interviewed, which was consistent with her testimony on direct examination. The prosecutor then attempted to show a prior inconsistent statement made by appellant's daughter as to her location when she heard the shots, although she was not given prior opportunity to explain or deny the statement as required by Evid.R. 613(B). Defense counsel objected to this line of questioning. The court agreed it was not proper rebuttal, but did not instruct the jurors with respect to this line of questioning.
This questioning, while improper as rebuttal testimony, did not substantially prejudice appellant. Most of the detective's testimony was consistent with the previous testimony of appellant's daughter. Additionally, appellant's daughter had already admitted on cross-examination that part of her statement to the police was inconsistent with her testimony at trial. She was also able to explain her reasons for not wanting to tell the police what happened. We therefore find that appellant was not substantially prejudiced by the prosecutor's questioning of appellant's daughter or by the testimony of the rebuttal witness.
After considering all of appellant's arguments under the second assignment of error, we find that appellant was not denied his right to a fair trial by the cumulative effect of the trial court's evidentiary rulings. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J. concur.