**ALLEN, Appellant,**

v.

**CONRAD, Admr., et al., Appellees.**

[Cite as *Allen v. Conrad* (2001), 141 Ohio App.3d 176.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77401.

Decided Jan. 25, 2001.

*Roy M. Kaufman,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Virginia Egan Fisher,* Assistant Attorney General, for appellee James Conrad.

*William L.S. Ross,* for appellee P.E. Technologies, Inc.

---

ANNE KILBANE, Judge.

This is an appeal from an order of Judge Kenneth Callahan that directed a verdict against the workers' compensation occupational disease appeal of appel-

lant John Allen. Allen claims that the judge erred when he struck relevant portions of his doctor's testimony on the basis that the expert failed to give a proper opinion concerning the cause of Allen's reactive airway dysfunction syndrome. We agree, reverse, and remand.

On July 16, 1996, Allen, then age thirty-three years, was hired as a welder by appellee P.E. Technologies, Inc. ("PET"). His duties included welding bronze and other metals and required the use of a respirator because exposure to resultant fumes could cause respiratory difficulties. At times he would weld bronze continuously for eight to ten hours per day throughout an entire work week. In October 1996, he began to experience dizziness, blurred vision, and rashes. By November 1996, he visited an emergency room complaining of these symptoms, and thereafter consulted with other physicians, but his symptoms increased in severity and included, *inter alia*, shortness of breath, sore throat, and coughing. Nevertheless, he continued to weld for PET until March 1997, when he stopped, apparently out of concern for PET's failure to follow bronze welding safety requirements.

On April 21, 1997, Allen filed a claim with the Bureau of Workers' Compensation ("BWC"), alleging illness from welding bronze and copper, that was denied by the Industrial Commission. On May 9, 1997, he filed a claim for toxic effect of a nonspecific gas vapor, and later filed a third claim for a work related injury, both of which also were denied. He filed appeals in the Cuyahoga County Court of Common Pleas, naming both PET and James Conrad, the Administrator of the BWC, as defendants. On November 18, 1999, the case proceeded to a *de novo* jury trial pursuant to R.C. 4123.512.

Allen testified on his own behalf at trial, and presented the deposition testimony of his treating physician, Chorng–Jen Hwang, M.D., a pulmonary specialist. Through deposition, Dr. Hwang stated that Allen suffered from reactive airway dysfunction syndrome ("RADS"), alternatively described as "irritant-induced asthma," a respiratory malady affecting persons who have inhaled toxic or irritating fumes. Hwang stated that he had researched literature on RADS that described its causes and symptoms, and offered five articles on the subject as exhibits and contended that Allen's symptoms were nearly identical to those described in one of the articles. PET and Conrad objected to introduction of the articles, as well as any testimony that discussed their contents, as hearsay, because the Ohio Rules of Evidence make no hearsay exception for learned treatises. The judge agreed and excluded the exhibits and struck, as hearsay, testimony concerning the symptoms described in the articles and Allen's presentation of those symptoms.

Hwang testified that Allen told him about the conditions that led to the development of his symptoms, specifically that he had worked as a welder for

fifteen years without respiratory problems until, at PET, he began to weld bronze [1] up to ten hours a day, as well as copper. When Hwang testified that bronze and copper welding can produce toxic fumes causing RADS, PET and Conrad objected to Hwang's testimony opining that bronze welding was the cause of Allen's symptoms. The judge sustained the objections and thereby essentially excluded any of Hwang's ultimate statements of opinion concerning the cause of Allen's condition. For example, the judge struck all of the following testimony:

"Q: Is there anything in there, in those documents, that would cause you to conclude or have any doubt about your diagnosis, the Toxic Effects Gas/Vapor and Reactive Airway Dysfunction Syndrome?

"MR. ROSS [attorney for PET]: Objection.

"A: There is no doubt in my mind that he has the Reactive Airway Dysfunction Syndrome secondary to the toxic fumes that he was exposed to.

"Q: And he told you the conditions at work, right?

"MR. ROSS: Objection.

"A: Yes.

"Q: Did you make any conclusions as to whether there's a causal relationship between his conditions at work and the Toxic Effects that has affected his body?

"MR. ROSS: Objection. No foundation.

"Q: Is there a relationship between the two?

"A: Yes, there is a relationship between the two.

"MR. ROSS: Objection.

"Q: What is that?

"A: It is the toxic fumes that is causing the Reactive Airway Dysfunction Syndrome and his current symptoms.

"Q: And those toxic fumes came from where?

"MR. ROSS: Objection.

"A: From welding the bronze.

"Q: Is there anything else that's ever given you any indication that the illness could be caused by any other conditions any place except the conditions at work?

"MR. ROSS: Objection.

"A: I don't think so. Everything seems to be related to his exposure to welding the bronze.

---

1. Bronze is an alloy of copper and other metals, usually tin.

"Q: Can you say definitely that the conditions at work probably caused the condition of toxic gas/vapor fumes and Reactive Airway Dysfunction Syndrome to John Allen?

"MR. ROSS: Same Objection.

"A: Yes."

More objections were made to similar testimony from Hwang, and PET and Conrad argued that those portions of his deposition should be stricken because he had not stated, in proper form, an opinion concerning the cause of Allen's RADS. PET and Conrad also argued that his testimony was not properly based on evidence in the record, in part because he based his opinion on his review of literature on the subject of RADS, and because the record contained insufficient factual details concerning Allen's employment conditions and their relation to his illness.

As already noted, the judge excluded the testimony discussing the symptoms described in the RADS articles as hearsay. Although the basis for his decisions to exclude Hwang's opinion testimony are not altogether clear, it appears the judge relied upon one or more of the grounds stated in the defenses' objections. Following the presentation of Hwang's redacted deposition testimony, the judge directed a verdict for the PET and Conrad and stated the following:

"The Court holds that the opinion expressed in *Darnell versus Eastman* at 23 Ohio St.2d 13 [52 O.O.2d 76, 261 N.E.2d 114], continues to be the law in the state of Ohio, relative to the admission of evidence on medical conditions that are beyond those that would ordinarily be within the comprehension of the layman.

"This was provided by the Supreme Court in *Stinson versus England* (1994), 69 Ohio St.3d 451 [633 N.E.2d 532], which states, in essence, the opinion, quote, 'The admission of the expert testimony that an event is the proximate cause is contingent upon the expression of opinion by the expert with respect to the causative event in terms of probability.'

"The Court would note that there was no such expression of opinion put forward in this case and, therefore, even viewing the evidence in the light most favorable to the plaintiff, is compelled to grant a directed verdict in favor of the defendant."

Allen's two assignments of error state:

"I. The lower court erred in concluding that plaintiff–appellant submitted no expert opinion evidence in respect to causation event in terms of probability of plaintiff–appellant's illness.

"II. The lower court erred in granting a directed verdict in favor of defendant–appellees."

■ We address these assignments together, because the directed verdict challenged in the second assignment of error is based on the finding challenged in the first. We review the grant of directed verdict *de novo*, to determine whether the judge correctly found that the defendants were entitled to judgment as a matter of law. Civ.R. 50(A); *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 109, 592 N.E.2d 828, 837. The issue here, however, involves the evidentiary rulings striking Hwang's opinion testimony, and we review evidentiary rulings for abuse of discretion. *State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 181–182, 372 N.E.2d 804, 808.

The judge struck all testimony in which Hwang stated his opinion that Allen's medical condition was caused by bronze welding at PET between July 1996 and March 1997. After these rulings Allen could no longer prove his case because he was left with no expert opinion on the issue of proximate cause. The judge correctly noted the need for expert testimony relating to proximate cause, and as there was none, granted the directed verdict. *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus.

We are left with an unusual situation. The judge's statement explaining the basis of his directed verdict is perfectly adequate under Civ.R. 50(D), but the substructure of that basis is composed of his evidentiary rulings striking Hwang's testimony. To determine the propriety of the directed verdict, we must determine whether it was correct to exclude Hwang's testimony.

Although we review the evidentiary rulings for abuse of discretion, and will affirm if we find the rulings supported on any basis, stated or unstated, we undertake our review here with the understanding that the discretionary rulings effectively destroyed Allen's prima facie case, and the true basis of the directed verdict is contained in the reasoning behind the evidentiary rulings themselves. The scope and effect of these rulings necessarily raise more concern for abuse.

■ The judge first excluded Hwang's reference to articles on which he based his opinion, as Ohio law makes no hearsay exception for learned treatises. Evid.R. 803; *Kane v. Ford Motor Co.* (1984), 17 Ohio App.3d 111, 112, 17 OBR 173, 174–175, 477 N.E.2d 662, 664. Learned treatise evidence is admissible, however, to impeach the credibility of an expert witness who has relied on the treatise in forming his opinion. *Stinson*, paragraph two of the syllabus.

The *Stinson* opinion recognizes that no one becomes an expert without doing research, and that an expert is entitled to rely on this research in forming his opinion. If this were not so there would be no need for a rule allowing impeachment through use of a learned treatise, because an expert would not be allowed to express any opinion relying on the hearsay treatise in the first place.

Indeed, in support of their objections the defendants relied on *Kane,* a decision that recognized and explained the same principle:

"With regard to the contested testimony of Dr. Bauer, we note that it is perfectly proper for an expert to rely upon 'facts or data * * * perceived by him,' Evid.R. 703, as well as to draw upon knowledge gained from other experts in the field, whether this knowledge was communicated orally or in writing. This information forms the 'scientific, technical, or other specialized knowledge' which qualifies the witness as an expert. Evid.R. 702. See *Hurley v. Connor* (March 22, 1984), Cuyahoga App. No. 47187, unreported [1984 WL 4569].

"In the instant matter, Dr. Bauer did not quote specific statements of other experts. His testimony merely referenced these studies as providing a partial basis for his knowledge on the disease of multiple sclerosis and hence his opinion on appellee's case. Moreover, appellant failed to object or dispute the qualifications of Dr. Bauer as an expert at trial. We therefore conclude that the admission of Dr. Bauer's presently contested testimony was consistent with Evid.R. 702 and 703 and, accordingly, properly allowed by the trial court. *Kane,* 17 Ohio App.3d at 112, 477 N.E.2d at 664."

Hwang similarly testified that he had reviewed articles on the subject of RADS, and referenced those articles in discussing his assessment and opinion in Allen's case. As in *Kane,* the defense here did not challenge Hwang's qualifications, but instead sought to exclude his testimony as based on hearsay because he derived some of his expertise from medical articles. Had Hwang simply asserted his knowledge without discussing that which he had gleaned from other expert's writings and research, the defense presumably would not have objected, despite the fact that the basis of his knowledge still would have been hearsay.

Hwang did not quote any of the articles, although he did make some specific references to them, and while these specific citations are inadmissible under *Kane,* his reference to the existence of articles generally is allowable. Moreover, his reference to an article by its exhibit number only would not qualify as a specific citation when the exhibits are properly excluded from evidence.

■ Allen urges us to find that the liberal construction due workers' compensation statutes contained in R.C. 4123.95 applies to our review of the evidentiary rulings here. While the BWC is empowered to consider any evidence it finds relevant to resolving the claim, R.C. 4123.10, and is required to apply that power liberally in favor of injured workers, R.C. 4123.95, we are unwilling to find that anything goes in an appeal to a court of common pleas. We are willing, however, to find that in workers' compensation appeals, a judge's discretion in evidentiary rulings should be exercised to resolve close questions in favor of injured workers.

We find it was an abuse of discretion to exclude Hwang's testimony about his review of articles on RADS.

For purposes of directed verdict, the critical testimony was Hwang's actual expression of his opinion that Allen incurred RADS as a proximate result of his work welding bronze at PET. Although the judge did not specifically state his reasons for excluding these portions of the testimony, he indicated that he accepted one or more of the defense's arguments for exclusion. Our review of these arguments, however, indicates that none is sufficient to uphold the rulings.[2] We glean two specific arguments from the defense's brief and the arguments before the judge (1) that Hwang failed to state his opinion as an opinion, but instead testified as though his conclusions were a matter of fact, and (2) that Hwang did not properly state his opinion as a response to a hypothetical question based on facts admitted as evidence, and his opinion could not properly be based on facts perceived by him.

Once recognized, the first argument requires little attention. PET and Conrad argue that Hwang's opinion was not properly "expressed in terms of probability." *Stinson,* paragraph one of the syllabus. The argument, however, does not focus on Hwang's failure to state his opinion with sufficient certainty; in fact, he testified that he had "no doubt" that Allen suffered from RADS as a result of his exposure to bronze metal fumes. The crux of the argument appears to be that he failed to state that his testimony was opinion, and not fact. At its core, this boils down to a complaint that Hwang did not preface his testimony with the clause, "It is my opinion that ***."

We will not waste a great deal of time dismissing such an argument. Obviously the expression of an expert's opinion does not have to be prefaced by a disclaimer that it is an opinion, because such revelations can be made in cross-examination· or closing argument. Moreover, even if one believed such an argument could be considered in the normal civil case, given the mandate of R.C. 4123.95, we are especially loath to uphold the exclusion of critical evidence on these flimsy, hypertechnical grounds.

The defense's second argument correctly states that Hwang did not state his opinion as an answer to hypothetical questions based on facts in evidence, but then mistakenly asserts that his opinions also were not based on personal knowledge or facts "perceived by him." Evid.R. 703. Hwang was Allen's treating physician as well as an expert witness, and his opinions were based on his physical examination of Allen, and his questioning of Allen concerning the nature of his symptoms, when they occurred, and the conditions of his employ-

---

2. Our opinion here does not reach the portions of Hwang's testimony excluded as irrelevant.

ment. He based his opinion on Allen's reports that he had never before experienced respiratory distress, that he had been welding other metals for fifteen years without difficulty, that his work at PET introduced him to bronze welding, and that he began experiencing respiratory difficulty after working at PET. Based on his research and expertise, Hwang determined that Allen's symptoms were consistent with RADS, and that Allen's significant and prolonged exposure to fumes from bronze welding was the cause of his condition. Allen's trial testimony was consistent with the statements Hwang relied upon in diagnosing RADS caused by his exposure to toxic bronze fumes.

PET and Conrad claim that Hwang's opinions did not have the proper factual foundation but fail to specify which factual elements are missing. Instead they simply argue that because the judge found Hwang's factual basis insufficient, it was not an abuse of discretion to exclude the opinion testimony. We cannot accept this conclusion without examining the basis of the judge's decision that Hwang's testimony lacked a factual basis, just as we cannot accept the grant of directed verdict without first assessing the evidentiary rulings on which it is based.

Our review of the record discloses no missing factual elements, the judge's opinion does not explain whether this was the basis for excluding the evidence, and neither the defense nor the judge have pointed out specific factual infirmities. We conclude that it was an abuse of discretion to exclude the opinions.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

TIMOTHY E. McMONAGLE, P.J., concurs.

JAMES D. SWEENEY, J., concurs separately.

JAMES D. SWEENEY, Judge, concurring.

I concur in judgment only and cite to concurring opinions in *State v. Thomas,* (May 13, 1999), Cuyahoga App. Nos. 72536 and 72537, unreported, 1999 WL 304296, and *Garnett v. Garnett* (Sept. 16, 1999), Cuyahoga App. No. 75225, unreported, at 3–4, 1999 WL 728378, and Loc.App.R. 22(C).