OPINION
{¶ 1} Appellant, Alfred Sykes ("Sykes"), appeals the jury verdict rendered on behalf of appellee, General Motors Corporation ("GM"), precluding him from participating in the Ohio Workers' Compensation system.
 {¶ 2} Sykes worked for U.S. Steel from 1953 until 1962; following his employment at U.S. Steel, appellant worked for Packard Electric/General Motors Corporation from 1963 through 1992. Subsequent to his retirement, Sykes sought inclusion in the Ohio Workers' Compensation Fund due to his exposure to asbestos and alleged complications arising therefrom. However, the Industrial Commission of Ohio determined that Sykes could not participate in the Ohio Workers' Compensation Fund. Sykes subsequently filed the current action against GM, et al. The central issue at trial was whether Sykes developed asbestosis as a result of his employment with GM.
 {¶ 3} At trial, both parties offered expert testimony from pulmonary disease specialists certified in the interpretation of lung x-rays. Sykes offered testimony, by way of deposition, from Dr. Laxminarayana Rao and Dr. Alvin Schonfeld, who appeared in person. Each of Sykes' experts testified that Sykes had asbestosis. Alternatively, GM provided deposition testimony from Dr. David Rosenberg. Dr. Rosenberg testified that, in his view, Syke's did not have asbestosis. Dr. Rosenberg testified that he relied on standards set forth by the American Thoracic Society ("ATS") in forming his opinion. Despite the disparate conclusions, each expert testified that he was a member of the ATS; moreover, Dr. Rao indicated that he agreed with the standards and methodologies set forth by the ATS.
 {¶ 4} After hearing testimony, the jury returned a verdict in GM's favor. Sykes now appeals the jury's verdict and raises the following assignments of error:
 {¶ 5} "[1.] The trial court committed prejudicial error by permitting the reference and use of the American Thoracic Society Guidelines by Defendant-Appellee General Motors Corporation in its case-in-chief during the direct examination of Defendant-Appellee General Motors Corporation's own expert witness.
 {¶ 6} "[2.] The trial court committed prejudicial error by permitting the introduction and use of the purported Webster's Dictionary definition of the term `reliable' without a proper foundation.
 {¶ 7} "[3.] The cumulative effect of the introduction of improper hearsay during the trial was prejudicial and precluded Plaintiff-Appellant from obtaining a fair trial."
 {¶ 8} The admission of evidence is a matter committed to the sound discretion of the court. Hineman v. Brown, 11th Dist. No. 2002-T-0006, 2003-Ohio-926, at ¶ 10. Where error in the admission of evidence is alleged, the reviewing court should be slow to interfere unless the trial court has clearly abused its discretion and the defendant has been materially prejudiced thereby. State v. Lyles (1989), 42 Ohio St.3d 98,99. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 9} Under his first assignment of error, Sykes contends that GM introduced and impermissibly used a learned treatise during direct examination of its expert witness. Specifically, Sykes argues that Dr. Rosenberg's (GM's pulmonary expert) reference and reliance on the ATS guidelines[1] during direct examination runs afoul of the hearsay rule set forth in Evid.R. 802. Thus, Sykes maintains that the trial court abused its discretion by allowing appellant's expert to so testify.
 {¶ 10} Appellant correctly notes that Ohio's hearsay rule(s) do not permit the use of a learned treatise on direct examination. The policies animating the exclusion of treatises as substantive evidence are grounded, in part, upon the hearsay nature of treatises. See, e.g.,Freshwater v. Scheidt (1999), 86 Ohio St.3d 260, 267. For instance, were a court to permit the admission of a treatise as substantive evidence, it would permit the author of that work to effectively testify without first being required to take an oath to substantiate the claims made and without being subject to confrontation by the adverse party. As such, adverse parties would have difficulty challenging the veracity of statements and soundness of conclusions contained within the treatise. See, Weissenberger's Ohio Evidence, 2002 Courtroom Manual, p. 346.
 {¶ 11} However, Evid.R. 706 reads, in relevant part:
 {¶ 12} "Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
 {¶ 13} "(A) Relied upon by an expert witness in reaching an opinion;
 {¶ 14} "(B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice. * * *"
 {¶ 15} Evid.R. 706 provides guidance as to what constitutes a learned treatise. Testimony can be characterized as a learned treatise if it involves "[s]tatements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art * * *."
 {¶ 16} Notwithstanding the rule barring the use of a learned treatise on direct examination, Evid.R. 706 permits the use of learned treatises for purposes of impeachment upon a proper foundation demonstrating that the learned treatise is a recognized and standard authority. As such, a learned treatise may be used to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents. Stinson v. England (1994), 69 Ohio St.3d 451, 459. However, the substance of the treatise may be used only to impeach the credibility of an expert who has relied upon the treatise or has acknowledged its authoritative nature. Id. With the foregoing observations in mind, we shall return to the case at bar.
 {¶ 17} Although Dr. Rosenberg as well as appellant's expert witness, Dr. Rao, refer loosely to the ATS guidelines, at no point in their testimony do the doctors make an explicit reference to a specific published treatise or body of work from which these guidelines derive. Without such a reference, we cannot conclude that the general reference to the ATS guidelines was an effort to introduce a learned treatise as substantive evidence on direct examination. Further, neither expert quotes "[s]tatements contained in published treatises, periodicals or pamphlets." Thus, Sykes' characterization of the evidence in question as a learned treatise is misplaced because no specified treatise, periodical, or pamphlet was actually introduced.
 {¶ 18} Moreover, Sykes' objections are grounded upon Dr. Rosenberg's discussion of the ATS standards. However, a review of the record demonstrates that Sykes' attorney failed to object to Dr. Rosenberg's general discussion of his diagnostic methods which were admittedly derivative of the ATS standards at issue. That is, when Dr. Rosenberg was asked to describe the ATS standards as they relate to the diagnosis of asbestosis, Sykes' attorney requested an opportunity to go "off the record." However, after going back on record, Dr. Rosenberg discusses the ATS methodology without objection from appellant. As such, Sykes' technically failed to preserve this error for review.
 {¶ 19} That said, we shall nevertheless address whether the reference to the ATS standards involve the use of impermissible hearsay and, if so, whether Sykes was actually prejudiced by the admission. Under Evid.R. 801, hearsay is defined as "a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Without an exception to the rule prohibiting hearsay, such evidence is inadmissible.
 {¶ 20} As indicated supra, Dr. Rosenberg did not quote any medical articles, pamphlets, or other evidence derivative of any out of court statement. In fact, Dr. Rosenberg's testimony regarding the ATS standards was offered simply to explain the basis of his medical conclusion. Such testimony is valuable to the extent that it establishes Dr. Rosenberg's methodology without which the jury would be unable to assess the reliability of his scientific conclusions.
 {¶ 21} Moreover, Drs. Rosenberg and Lao referred to the ATS guidelines and attested to their clinical and/or diagnostic value. However, the ATS guidelines were never specifically read into evidence or quoted such that the medical expert's who authored them could be understood to have made any substantive statement. Because there is no specific statement, there can be no specific declarant and therefore no confrontation clause problem.[2]
 {¶ 22} Further, the propriety of Dr. Rosenberg's testimony is underscored by recourse to Evid.R. 702 and 703. That is, an expert may properly rely upon "facts or data * * * perceived by him," Evid.R. 703, as well as to utilize knowledge gained from other experts in the field, whether such knowledge has been communicated orally or in writing. Allenv. Conrad (2001), 114 Ohio App.3d 176, 182. This information forms the "scientific, technical, or other specialized knowledge" which qualifies the witness as an expert. Evid.R. 702(c); Kane v. Ford Motor Co. (1984),17 Ohio App.3d 111, 112.
 {¶ 23} The rules governing expert testimony appear to conflict with the prohibition against hearsay to the extent that an expert may rely upon hearsay theories or practices and testify accordingly. However, the ostensible conflict is resolved by distinguishing "* * * between an expert opinion which has incorporated the scholarly opinion of others, and the direct quotation of the opinion or conclusions of other experts, which is not permitted." Beavercreek Local Schools v. Basic, Inc.
(1991), 71 Ohio App.3d 669, 676-677.
 {¶ 24} This distinction is patent once one recognizes that no one becomes an expert without conducting research and building upon the research of others. Inasmuch as this is true, an expert is entitled to rely upon her research and experience in forming her opinion. Were this not the case, "there would be no need for a rule allowing impeachment through use of a learned treatise because an expert would not be allowed to express any opinion relying on the `hearsay' treatise in the first place." Allen, supra, at 181.[3]
 {¶ 25} In the case sub judice, Dr. Rosenberg did not quote specific statements of other experts. His testimony merely referenced the ATS guidelines which helped him provide an objective opinion as to Sykes' pulmonary condition. Moreover, Sykes did not object to Dr. Rosenberg's qualifications as an expert at trial. We therefore hold that the admission of Dr. Rosenberg's currently disputed testimony was consistent with Evid. R. 702 and 703 and thus properly allowed by the trial court. See, e.g., Kane, supra, at 112. Consequently, the court did not abuse its discretion by admitting the evidence nor was Sykes materially prejudiced by its admission.
 {¶ 26} For these reasons, appellant's first assignment of error is without merit.
 {¶ 27} Under his second assignment of error, Sykes argues that the use of the Webster's Dictionary definition of the term "reliable" during cross-examination of Dr. Rao violated the prohibition against hearsay set forth in Evid.R. 802. Moreover, Sykes asserts that GM failed to lay a foundation for utilization of Webster's Dictionary definition of "reliable." Therefore, Sykes concludes, the dictionary definition was improperly allowed in violation of Evid.R. 801 and 802.
 {¶ 28} Appellant properly notes that privately printed books, publications, and newspaper articles are not admissible as evidence of the facts stated in the articles due to the rule prohibiting the admission of hearsay evidence. Sipniewski v. Leach (Oct. 4, 1983), 2d Dist. No. 8123, 1983 Ohio App. Lexis 13240, at 7. However, no error in either the admission or exclusion of evidence is grounds for a new trial unless prejudicial error is shown to have resulted from such admission or exclusion. Civ.R. 61.
 {¶ 29} With this in mind, an evidentiary foundation is generally required to establish the admissibility of evidence. To wit, an attorney will lay a foundation to establish the relevancy of evidence that does not otherwise appear relevant to the matter at hand In the instant case, GM's attorney failed to lay an explicit foundation for the dictionary definition of "reliable;" however, during cross-examination, appellant's expert witness confirmed the accuracy of the definition. Specifically, the following dialogue occurred between GM's attorney (Mr. Webbs) and Sykes' expert (Dr. Rao) during cross-examination:
 {¶ 30} "[Mr. Webbs:] What I have brought with me, Doctor, is a poster which simply has on it Webster's definition of reliable. If we can read that together, `reliable is suitable or fit to be relied on; dependable; giving the same result on successive trials.' Is that fair, do you agree with that?
 {¶ 31} "[Dr. Rao:] Yeah, I agree with that.
 {¶ 32} "[Mr. Webbs:] So in other words, if you have a patient who tells you one thing on one occasion and then on another occasion tells you the complete opposite, that's not reliable, is it?
 {¶ 33} "[Dr. Rao:] That's correct
 {¶ 34} "[Mr. Webbs:] If his testimony to you is not reliable, then it's extremely difficult for you to write a reliable report, wouldn't you agree?
 {¶ 35} "[Dr. Rao:] I take for granted it's a reliable history, so that's — we go by what the client says and I have no proof to the contrary without the access to other records."
 {¶ 36} Even if the dictionary and/or its definition was technically hearsay, the reliability and truthfulness of the definition was established by the testimony of Sykes' expert himself. Therefore, Sykes cannot demonstrate that he was prejudiced by GM's use of Webster's dictionary definition of reliability because Dr. Rao adopted the proposed definition as his own. See, Sipniewski, supra. at 8. As a result, we can find no abuse of discretion in the admission into evidence of the dictionary definition in question, nor can we find prejudicial error to have resulted to Sykes from its admission.
 {¶ 37} Therefore, appellant's second assignment of error is overruled.
 {¶ 38} In his third and final assignment of error, Sykes argues that the cumulative effect of the introduction of the hearsay alleged in his first and second assignments deprived him of his right to a fair trial. Sykes' claim of cumulative error is predicated upon the prejudice he experienced through the cumulative effect of improperly admitted hearsay evidence. Specifically, Sykes contends that "the use of the ATS guidelines precluded cross-examination of `leading experts of the world,' thereby depriving Mr. Sykes of a substantial right, i.e., the right to participate in the Ohio Worker's Compensation System."
 {¶ 39} In Ohio, the cumulative error doctrine is not universally employed in a civil context. McQueen v. Goldey (1984), 20 Ohio App.3d 41,50; Allen v. Summe (May 17, 1993), 12th Dist. No. CA92-04-067, 1993 Ohio App. LEXIS 2553, at 4. However, we need not discuss this issue since we find no error in the admission of the alleged "hearsay" evidence to which Sykes assigns error. Therefore, without error, harmless or otherwise, there can be no cumulative error. Thus, appellant's third assignment of error lacks merit.
 {¶ 40} For the foregoing reasons, Sykes' three assignments of error lack merit and the jury verdict on which this appeal is based is hereby affirmed.
Judgment affirmed.
Judith A. Christley and Diane V. Grendell, JJ., concur.
[1] Sykes contends that the ATS guidelines are tantamount to a learned treatise for which Ohio's hearsay rules do not have an exception.
[2] One of the primary bases for excluding hearsay evidence is the inability of an adverse party to cross-examine the declarant and test his or her sincerity, perception, memory, etc. Such examination is at the heart of the Sixth Amendment's Confrontation Clause.
[3] It is worth noting that if we were to adopt Sykes' argument, no experts could testify to objective methodologies commonly used within their field. To wit, any methodology is necessarily dependent on a vast array of experts whose trials and errors assisted in its development. As such, the prohibition against hearsay would be an inevitable roadblock to nearly all expert testimony. According to Sykes' construction, all such methods would be inadmissible learned treatises. Obviously, such a rule would have a chilling, if not fatal effect on the submission of expert testimony as a whole. This is undesirable to the extent that expert testimony is frequently the most effective way for a jury to arrive at an informed verdict on the factual merits of a case.