## NEW CROSSINGS OF RAILWAYS AT GRADE.

Court of Common Pleas of Trumbull County.

THE CITY OF WARREN v. THE N. Y., P. & O. R. R. Co. and THE
ERIE RAILROAD COMPANY.*

Decided, March 21, 1919.

*Appropriation of Railway Right-of-Way for a Grade Crossing—Public Convenience as Distinguished from Public Necessity in the Matter of Crossings—Future Requirements of the Railway as well as of the Public Must be Considered—Policy of the State with Reference to New Grade Crossings.*

An action does not lie under the present statute for the appropriation of so much of a railway right-of-way as would be required to extend a street over the company's tracks, and for an order for a grade crossing at that point, when the evidence goes to show that the benefit to the public from the proposed crossing would be small, the increased burden which it would cast upon the railway would be serious, the location perilous for a grade crossing because of obstruction of the view, and that a crossing at that point would be one of convenience rather than of necessity.

*R. D. Leffingwell,* City Solicitor, and *D. R. Gilbert,* for plaintiff.

*Gilmer & Gilmer* and *J. Paul Lamb,* contra.

COLE, J.

The city of Warren by proper legislation determined to appropriate that portion of the defendant railroad company's right-of-way contained within the limits of Paige avenue if extended across the railroad tracks in the northeasterly part of the city. It then brought action under Section 3677 *et seq.,* G. C., to assess the compensation due the railroad companies by reason

*Appeal dismissed by the Court of Appeals, September 19, 1919.

of such appropriation, and also by proper averments in the petition asking for an order for a grade crossing at the place where the appropriation is made under the provisions of Section 8897 *et seq.,* G. C.

The right to maintain a single action for the determination of both of these objects seems to be settled in the case of the *C. & P. R. R. Co.* v. *City of Martins Ferry,* 92 O. S., 157, in which the court discussed the question quite fully.

In appropriation cases by municipalities the general rule is that the appropriation is complete when the proper legislation has been made by council; but in cases where it is sought to appropriate a portion of the right of way of a railroad company, a very important preliminary question must be determined by the court. This question relates to whether the appropriation will unnecessarily interfere with the reasonable use of the property so crossed by such improvement. See G. C. 3677, Sub. 1; *P. C., C. & St. L. Ry. Co.* v. *City of Greenville,* 69 O. S., 497; *C. & P. R. R. Co.* v. *City of Martins Ferry,* 92 O. S., 157.

While this preliminary question necessarily comes before the court, it is also made the subject of the fourth defense in the answers of the defendant companies and the issue on the same is joined by the reply of the city.

The allegations of the petition for the establishment of a grade crossing are also denied by the answer, although this is possibly not necessary. The evidence offered in the trial relates solely to these two questions and from the nature of the case the evidence is in a large degree applicable to each situation. In passing on the matters it has seemed convenient to first determine the application for a crossing at grade.

This railroad was constructed in about 1863 when the city was no larger than some villages and the territory in and around the proposed crossing largely covered with timber and wholly without the limits of the municipality. In fact it is only within the last few years that it became incorporated within the city limits. Owing to the rapid growth of the city within a comparatively short time, caused in part probably by the increased industrial activities of the country at large, the shipping facilities of Warren, and other local causes, the city has increased from about

twelve thousand population in 1910 to approximately twenty-eight thousand at the present time. It is said to have doubled its population in the last five years. Industrial plants, attracted by cheap locations and railroad facilities, have sprung up along the railroads and quite a number are located along the defendants railroad on both the north and south side, and others are located to the north and east of the proposed crossing along the line of the Pennsylvania company. Most of the employees in these industries now live south of defendants' railroad and are obliged to cross its tracks in going to and from work, some of them crossing at the Pennsylvania tracks about six hundred feet east of the proposed crossing, others at Park avenue about twenty-three hundred feet west, and some at the proposed crossing.

The city acquired the land to extend Paige avenue from Dana avenue on the south to Griswold street on the north, excepting the crossing in question, opened it up as a street and constructed sidewalks on the east side—the right-of-way being left upon. This action, no doubt, accounts in a large way for its present use, for it really constitutes an invitation for people to use that part where the sidewalk is and trespass on the railroad right-of-way over the remainder. The evidence varies as to the amount of use made of this crossing; from fifty or sixty to three hundred or more persons crossing in a day. No highway leads from the north end of the proposed extension into the country or to any present residence district, the houses in the vicinity and to the north being very few and scattered. Large tracts of land have been allotted north of Griswold street and between North Park avenue and the Pennsylvania railroad; but none of the streets in the allotments are dependent on the use of the proposed extension of Paige avenue. Nor would this extension shorten the distance materially from any of the territory on the north and east of the proposed crossing to the business center of the city, or to any of the railroad freight depots, except that of the Pennsylvania company. The traffic from this depot to and from any one of the several industries lying north and east is from three to four truck loads a week to three or four package deliveries within the same time.

It is further said in argument in behalf of the city that a good deal of pressure was brought to bear on the council by the owners of these allotted lands and proprietors of those industries to induce it to purchase the land for this extension, make the improvements now there and institute this proceeding for a grade crossing. The city further insists that within a very short time those allotted tracts of land will be built up into residence districts, where nearly all of the employees working in the factories and plants in that neighborhood will find their homes.

Park avenue is the main thoroughfare leading from the business section of the city north into the country and is located some 2,300 feet west of the proposed crossing. The streets laid out in the allotments above referred to are conveniently located for access to this thoroughfare. It is now the main artery of travel serving this territory and will probably continue to remain so.

If this should turn out to be true, and the court is of the opinion from the evidence that it probably will, the reason for establishing a grade crossing at this place would practically cease to exist, except for the small amount of freight above referred to.

The railroad company now uses its tracks from Park avenue to the Pennsylvania company's crossing, not only for its through train service, but also to serve the several industries located on its line and its connecting track with that of the Pennsylvania company. The evidence shows that there are from one hundred to a hundred and fifty train movements over this proposed crossing each day, with every probability that this will be largely increased in the near future, making all of this part of its right-of-way a railroad yard.

The railroad company claims that by reason of an ordinance regulating the speed of trains through the city to four miles per hour over street crossings, it would be impossible for it to perform its duties to the public and serve these industries, and observe the ordinance at the same time. If the ordinance continues this would probably be true; but it does not appear that any effort has been made to modify the ordinance. At least, there is no presumption that this ordinance will continue permanently.

The evidence further shows that it is not possible to separate the grades at this point by a subway for the street to pass under the railroad because of a lack of drainage facilities; but an overhead structure spanning the right-of-way with a five per cent. grade is perfectly feasible, the cost would, however, be from fifty to sixty thousand dollars and wholly out of proportion to any benefit that could accrue to the city or those interested in the establishment of this extension, and would involve the city and the railroad company in an unwarranted expenditure of money.

It further appears that the railroad approaches this proposed crossing on a curve and that by reason of the buildings and other obstructions erected upon private land, the view to the approach of that crossing is very much interfered with, and that these obstructions would in all probability be increased in the future rather than diminished.

These are the most important facts disclosed in the evidence, and it is upon this showing that the city claims it has made out a case and shown such a necessity as will require the court to grant the prayer of its petition by establishing a grade crossing.

It is worthy of remark that no one in the case, either witness or counsel, has had a good word to say for such crossing. Every one recognizes the danger attending them. And all agree that it is ony in case of a public necessity as distinguished from a mere public convenience that courts should act favorably on an application of this kind.

The policy of the state was declared in 1904, when it passed the act abolishing grade crossings at streets and highways. About the same time it further prohibited grade crossings by railroads crossing each other or crossings by street and interurban railroads over steam railroads at grade.

This railroad is bound to render service as a common carrier to all the public along its entire line with reasonable security and dispatch, taking into consideration such reasonable legislation as is required to accommodate each local public or city, and each city or local community must suffer such slight inconvenience in avoiding crossings over the railroad as will permit the railroad company to reasonably perform these duties. And it is

only when some real necessity of the local public arises for such crossing, as distinguished from a mere public convenience that warrants a court in finding that such proposed crossing will not unnecessarily interfere with the operation of the railroad if the improvement is made.

The court is of the opinion that the city has not made a case either for the establishment of a grade crossing at this point or one that will permit it to appropriate the right-of-way of the railroad company for a street. This being the conclusion of the court, the petition is dismissed at the costs of the city.