OPINION
{¶ 1} Appellant, CSX Transportation, Incorporated, appeals from the May 28, 2003 judgment entry of the Lake County Court of Common Pleas, granting appellee's, the city of Mentor's, petitions to construct a new highway railroad at-grade crossing at Plaza Boulevard across the tracks of appellant and Norfolk Southern Railway Company ("NS").
 {¶ 2} On October 17, 2000, appellee filed petitions against NS and appellant, pursuant to R.C. 4957.30 and R.C. 4957.31, seeking permission to construct a new highway railroad at-grade crossing, known as the Plaza Connector, over three mainline railroad tracks in connection with a proposed extension of Plaza Boulevard north from the intersection of Mentor Avenue to St. Clair Avenue in Mentor, Ohio.[1]
 {¶ 3} The Ohio Rail Development Commission ("ORDC") filed a motion to intervene which was granted by the trial court on April 1, 2003.
 {¶ 4} The parties mediated the instant dispute in April 2003, but were unable to reach an agreement. A bench trial was held on April 14, 2003 through April 28, 2003.[2]
 {¶ 5} Appellee, Ohio's fifth largest retail center, is a growing community that has experienced significant commercial, industrial, and residential development over the last several decades. Appellee's traffic problems are a concern in its retail/commercial center around the Great Lakes Mall, located in the southwest portion. The railroad corridor, which divides appellee in half, consists of two independent railroad tracks owned and operated by NS and appellant. Approximately fifty to sixty trains per day use appellant's double mainline tracks and about eight to twelve trains per day use the single mainline track of NS through appellee.
 {¶ 6} In 1990, the Master Street Program Committee, a group comprised of city council members, planning commission members, and residents of appellee, recommended the construction of the Plaza Connector to appellee's city council.
 {¶ 7} In the early 1990's, appellee retained three independent consultants, Northeast Ohio Areawide Coordinating Agency ("NOACA"), URS Consultants ("URS"), and CT Consultants, Inc. ("CT"), which confirmed the need for traffic improvements and an additional north/south grade crossing in appellee's southwest portion in order to relieve its growing congestion and delay. It was determined that an underpass was not physically or economically feasible, and that an at-grade crossing be constructed to protect the health, safety, and welfare of appellee's residents.
 {¶ 8} An at-grade crossing would cost appellee approximately $1,623,000, whereas an underpass, if physically feasible, would cost about $14,970,000. Studies also found that the underpass alternative would have a much greater negative economic impact upon the affected businesses, employees, and appellee itself. In addition, appellee does not have the financial resources needed to finance the construction of a grade separation structure.
 {¶ 9} In 2002, CT updated its study and found that traffic congestion problems in the southwest portion were worse and that the transportation network was failing. CT determined that due to the problem here, appellee's motorists expend approximately $5,087,160 per year in excess fuel and time costs. CT's updated study indicated that the Plaza Connector would help alleviate traffic congestion, improve traffic flow, reduce both accident rates and the millions of dollars expended by appellee's motorists as a result of those accidents, excess travel costs, delay damages, and fuel expenses, as well as improve police, fire, and EMS response times.
 {¶ 10} Studies showed that accident rates in the area at issue have risen since 1995, due mainly to the significant traffic congestion, causing injuries ranging from bumps and bruises to deaths. Appellee presented evidence that motorists spend approximately $4,103,172 per year for the costs associated with traffic accidents in the affected area. If steps are not taken to alleviate the traffic congestion, accident costs will rise to approximately $5,245,310 annually by 2022. As a result of the traffic congestion and lack of an additional north/south connection, emergency response times are below the recommended national standards.
 {¶ 11} Gilbert Carmichael ("Carmichael"), former Federal Railroad Administrator, testified for appellant that he investigated the proposed at-grade crossing and inspected the site. Carmichael indicated that an increase in traffic congestion equals an increase in both accidents and wear and tear on the roadway system.
 {¶ 12} Appellee's proposal evidences that it has offered to equip the Plaza Connector crossing with the highest level of safety devices possible. Appellee's proposal contains an at-grade crossing with state of the art protective devices, including four-quadrant gates, median barriers, vehicle presence detectors, interconnected constant warning devices, an advanced warning system, and traffic improvements.
 {¶ 13} Susan Kirkland ("Kirkland"), ORDC's manager of safety operations, testified that four-quadrant gates are still experimental in Ohio.[3] However, Kirkland admitted that the state of Ohio will implement four-quadrant gates in the future because they are better than other available alternatives and are an improvement over the standard two-quadrant gates. Kirtland also stated that appellee's proposal is reasonable and feasible.
 {¶ 14} Dan Gilbert ("Gilbert"), NS's system manager for grade crossing safety, indicated that four-quadrant gates help motorists make better decisions at highway-rail grade crossings. James Young ("Young"), chairman of NS's grade crossing safety and trespass section, stated that four-quadrant gates are the best active safety devices available for highway-rail grade crossings.
 {¶ 15} The Federal Railroad Administration conducted a nationwide study of supplemental safety devices used at highway-rail grade crossings and found that four-quadrant gates and median barriers have an effectiveness rate of ninety-two percent. Appellee also presented evidence that four-quadrant gates and median barriers together reduce driver violations of traffic signals and safety devices at grade crossings by ninety-eight percent.
 {¶ 16} Ronald Eck ("Eck"), a licensed civil engineer, testified for appellee that after considerable investigation, he believed that the proposed at-grade crossing could be designed to be reasonably safe.
 {¶ 17} Eric Peterson ("Peterson"), appellant's assistant chief engineer for signal design and construction, indicated that he had safety concerns regarding the installation of the additional mainline tracks. Also, Peterson believed that a complete engineering study at the location at issue was required in order to properly calculate warning time.
 {¶ 18} Chris Burger ("Burger") has been involved in the railroad industry for about forty years and has held various train dispatching, operations, and management positions during his career. Burger was retained by appellee to analyze what impact the Plaza Connector grade crossing would have on NS's and appellant's train operations in Northeast Ohio. Burger opined that the construction of the proposed grade crossing would have no significant impact on NS's and appellant's train operations.
 {¶ 19} Pursuant to its May 28, 2003 judgment entry, the trial court granted appellee's petitions to construct a new highway railroad at-grade crossing at Plaza Boulevard across the tracks of NS and appellant. The trial court noted that it would set a hearing on the measure of damages for the appropriation of the railroads' property under R.C. 163.01.[4]
It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 20} "[1.] The trial court erred in holding that the railroads bear the burden of proving that the crossing would unreasonably interfere with railroad operations.
 {¶ 21} "[2.] The trial court erred in holding that railroads bear the burden of proving that the proposed railroad crossing would be unreasonably unsafe.
 {¶ 22} "[3.] The trial court erred in holding that the railroads bear the burden of proving that an underpass is physically feasible.
 {¶ 23} "[4.] The trial court erred in considering evidence regarding other grade separation projects as a basis for holding that the criteria set forth in R.C. 4957.31 had been met.
 {¶ 24} "[5.] The trial court erred in holding, based on the evidence presented, that [appellee] had met the criteria set forth in R.C. 4957.31
for installation of the proposed crossing by clear and convincing evidence.
 {¶ 25} "[6.] The trial court erred in holding, based on the evidence presented, that the new crossing would not unnecessarily interfere with [appellant's] operations.
 {¶ 26} "[7.] The trial court erred in holding that federal law does not preempt the installation of the proposed crossing."
 {¶ 27} In its first assignment of error, appellant argues that the trial court erred in holding that appellant had the burden of proving that the crossing would unreasonably interfere with railroad operations. Appellant stresses that appellee must prove by clear and convincing evidence that the crossing will not unreasonably interfere with railroad operations.
 {¶ 28} Where a matter is tried to the trial court, the trial court is required to assess the weight and credibility of the witnesses. Fostoriav. CSX Transportation, Inc. (Dec. 18, 1991), 3d Dist. No. 13-91-3, 1991 Ohio App. LEXIS 6071, at 3. When there is nothing in the record to demonstrate that the trial court imposed an incorrect burden of proof, a reviewing court must presume that the trial court imposed the proper burden. Id. at 4.
 {¶ 29} R.C. 719.01(A) states that:
 {¶ 30} "[f]or opening, widening, straightening, changing the grade of, and extending streets, and all other public places, and for this purpose, the municipal corporation may appropriate the right of way across railway tracks and lands held by railway companies, where such appropriation will not unnecessarily interfere with the reasonable use of such property, and for obtaining material for the improvement of streets and other public places[.]"
 {¶ 31} R.C. 719.01(A) addresses the issue of unnecessary interference, which places the burden of proof on the city to show that the proposed crossing will not unnecessarily interfere with the reasonable use of the railroads' property. See Cleveland P.R. Co. v.Martins Ferry (1915), 92 Ohio St. 157, 162; Warren v. Erie R.R. Co.
(1919), 1919 Ohio Misc. LEXIS 76. Here, the trial court improperly placed the burden of proof under R.C. 719.01(A) on appellant to show that the proposed crossing unnecessarily interferes with its operations. Although an improper burden was applied, the trial court's substantive analysis and the evidence support the ultimate conclusion reached by the court. Thus, the trial court's error was harmless. Appellant's first assignment of error is without merit.
 {¶ 32} In its second assignment of error, appellant contends that the trial court erred in holding that railroads bear the burden of proving that the proposed crossing would be unreasonably unsafe. Appellant presents two issues. In its first issue, appellant alleges that appellee must prove by clear and convincing evidence that the crossing will not present an undue risk to public safety. In its second issue, appellant maintains that even if it bore the burden of proving that the crossing would unreasonably interfere with its operations, that burden would not include the risk to public safety posed by the crossing.
 {¶ 33} R.C. 4957.31 provides that:
 {¶ 34} "[t]he petition referred to in [R.C. 4957.30] shall set forth the reasons that are supposed to make such change or alteration necessary or desirable. The court of common pleas thereupon shall have the jurisdiction of the parties and the subject matter of the petition, and may proceed to examine the matter, either by evidence, by reference to a master commissioner, or otherwise. If satisfied that such construction is reasonably required to accommodate the public, or to avoid excessive expense, in view of the small amount of traffic on the highway or railroad, and considering the future uses to which the highway may be adapted, or in view of the difficulties of other methods of construction, or for other good and sufficient reasons, the court shall make an order permitting such crossing at a grade or diversion to be established. In such order, the court may prescribe that gates, signals, watchmen, or other safeguards shall be maintained by the railroad company, in addition to the signals and safeguards prescribed by law, and all such orders shall be binding upon the parties and be observed by them."
 {¶ 35} In the case at bar, the trial court stated in its May 28, 2003 judgment entry that pursuant to R.C. 4957.31 and Fostoria, supra, appellee must satisfy the trial court by clear and convincing evidence that construction of an at-grade crossing is reasonably required. The trial court determined that appellee was required to overcome the rebuttable presumption against at-grade crossings contained in R.C.4957.31.
 {¶ 36} We do not agree with appellant's contention that the trial court did not consider safety as a factor in its R.C. 4957.31
considerations.
 {¶ 37} In paragraphs 609-611 of its judgment entry, the trial court specifically stated that:
 {¶ 38} "[Appellee] is proposing to use state-of-the-art protective devices at the proposed grade crossing which will make it one of the safest in the State of Ohio.
 {¶ 39} "The crossing will include four-quadrant gates and a median barrier, which final design will be based upon an engineering study that both [appellee], [NS], and [appellant] will jointly cooperate and participate in for purposes of finalizing all aspects of that design.
 {¶ 40} "Overall, the safety of [appellee's] and Lake County's residents and motorists will be improved because of the closing of the two Heisley Road crossings and the use of four-quadrant gates and median barriers at the Plaza Boulevard crossing."
 {¶ 41} Appellant is correct that the trial court improperly stated in its judgment entry that pursuant to R.C. 719.01(A), appellant had the burden of proving that the proposed crossing is unreasonably unsafe. R.C. 719.01(A) addresses the issue of unnecessary interference, rather than safety, and the burden of proof is placed on the city. See MartinsFerry and Warren, supra. Here, however, the trial court properly analyzed the safety issue of the proposed crossing under R.C. 4957.31, and placed the burden of proof on appellee. Thus, although the trial court improperly placed the burden on appellant with respect to R.C. 719.01(A), it properly reviewed the safety of the at-grade crossing and determined that construction was reasonably required under R.C. 4957.31. Therefore, the trial court's misallocation of the burden of proof with respect to R.C. 719.01(A) was not improperly transposed with reference to R.C.4957.31. Appellant's first and second issues are not well-taken. Appellant's second assignment of error is without merit.
 {¶ 42} In its third assignment of error, appellant contends that the trial court erred in holding that appellant bears the burden of proving that an underpass is physically feasible. Appellant stresses that appellee must prove by clear and convincing evidence that a grade separation is not feasible.
 {¶ 43} Here, pursuant to its judgment entry, it is clear that the trial court placed the burden of proof under R.C. 4957.31 upon appellee. Again, the proper standard under R.C. 4957.31 is whether the crossing "is reasonably required * * * in view of the difficulties of other methods of construction * * *." Thus, the standard is not whether the underpass is or is not physically feasible. The trial court's statement that "[t]here is no clear evidence that an underpass is physically feasible" does not demonstrate that the trial court placed a de facto burden of proof on appellant to establish the feasibility of alternatives to the at-grade crossing.
 {¶ 44} Appellee's three independent consultants, NOACA, URS, and CT determined that an underpass was not physically or economically feasible. Also, appellee presented evidence at trial regarding the physical difficulties associated with constructing an underpass, which appellant failed to rebut. Appellant's third assignment of error is without merit.
 {¶ 45} In its fourth assignment of error, appellant maintains that the trial court erred in considering evidence regarding other grade separation projects as a basis for holding that the criteria set forth in R.C. 4957.31 had been met. Appellant alleges that where the trial court sustains at trial an objection to introduction of hearsay evidence but relies on that evidence to reach its decision, the judgment must be reversed.
 {¶ 46} This court stated in Sykes v. General Motors Corp., 11th Dist. No. 2003-T0-007, 2003-Ohio-7217, at ¶ 8, that:
 {¶ 47} "[t]he admission of evidence is a matter committed to the sound discretion of the court. Hineman v. Brown, 11th Dist. No. 2002-T-0006, 2003-Ohio-926, at ¶ 10. Where error in the admission of evidence is alleged, the reviewing court should be slow to interfere unless the trial court has clearly abused its discretion and the defendant has been materially prejudiced thereby. State v. Lyles (1989), 42 Ohio St.3d 98, 99
* * *. `The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 * * *." (Parallel citations omitted.)
 {¶ 48} Evid.R. 801(C) provides that: "`[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 49} In the case sub judice, John Konrad ("Konrad"), appellee's engineer, testified that he was aware of a similar grade separation project in Berea, Ohio, which was not built due to issues regarding the construction of temporary detour tracks. Konrad indicated that he had similar concerns regarding the construction of an underpass at Plaza Boulevard.
 {¶ 50} Specifically, the following colloquy occurred between Konrad, NS's counsel, appellee's counsel, and the trial judge:
 {¶ 51} Appellee's counsel asked Konrad if he was "aware of examination where grade separations were not feasible because of that?" Konrad responded that he "spoke to the Berea city engineer[.]" NS's counsel objected. The trial judge stated "[i]f he's going to tell us what the Berea city engineer said, then — [.]" Appellee's counsel stated that "I don't want to know what he said. I'm just saying, is he aware of examples where the feasibility has prevented underpasses from being done." The trial judge said "[o]kay. That answer would just be yes or no. Are you familiar with other feasibilities of underpass was determinative; is that correct?" Appellee's counsel responded, "[c]orrect." Konrad then stated that he was familiar with the Berea project, where detour issues affected feasibility. Konrad explained that that is one of many concerns that he had regarding the underpass at issue here. Appellee's counsel then asked Konrad about the traffic intersection improvements that were referenced in the CT study.
 {¶ 52} In addition, Clyde Hadden ("Hadden"), an engineer with CT, testified for appellee with respect to the problems encountered by appellee in connection with its grade separation project. Hadden stated that he was familiar with Berea's situation where it attempted to utilize an underpass but determined that is was not feasible. Appellant's counsel did not object to Hadden's testimony.
 {¶ 53} Here, even assuming arguendo that Konrad's testimony constituted impermissible hearsay under Evid.R. 801(C), appellant was not prejudiced by the trial court's finding regarding Berea's project. See, generally, Harrow v. Harrow (Jan. 15, 1988), 11th Dist. No. 3674, 1988 Ohio App. LEXIS 84. Again, engineer Hadden testified with respect to Berea's situation, and appellant did not object. Therefore, any error, if at all, was harmless at best. Appellant's fourth assignment of error is without merit.
 {¶ 54} In its fifth assignment of error, appellant argues that the trial court erred in holding, based on the evidence presented, that appellee had met the criteria set forth in R.C. 4957.31 for installation of the proposed crossing by clear and convincing evidence. Appellant presents three issues. In its first issue, appellant contends that appellee has not proven that a crossing is reasonably required where the evidence demonstrates that the proposed crossing will result in an increase in vehicular accidents on nearby streets. In its second issue, appellant maintains that appellee has not proven that a crossing is reasonably required where the evidence indicates that emergency response times are currently adequate. In its third issue, appellant alleges that appellee has not proven that a crossing is reasonably required where there is no evidence that the crossing itself would materially improve traffic flows.
 {¶ 55} An appellate court will not substitute its judgment for that of the trial court where the record contains competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court. Hubbard ex rel. Creed v. Sauline (1996), 74 Ohio St.3d 402,406. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 56} Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, states:
 {¶ 57} "* * * [J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279 * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal [supra] * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v.Ross (1980), 64 Ohio St.2d 203 * * *." (Parallel citations omitted.)
 {¶ 58} In the instant matter, pursuant to R.C. 4957.31, the trial court stated at paragraphs 696 and 697 in its judgment entry that:
 {¶ 59} "[Appellee's] traffic congestion poses a significant risk to the health, safety, and welfare of [its] residents and motorists. The Plaza Boulevard Connector is needed to protect the health, safety, and welfare of [appellee's] residents and motorists. An underpass is not physically or economically feasible at the Plaza Boulevard location. The proposed at-grade crossing at Plaza Boulevard will be one of the safest in the State of Ohio because it will have the highest form of protective devices currently available. The proposed crossing will not have a significant impact upon the train operations of either [NS] or [appellant].
 {¶ 60} "Accordingly, the construction of an at-grade crossing over the three mainline railroad tracks of [NS] and [appellant] at Plaza Boulevard is reasonably required to accommodate the public, in view of the difficulties and excessive expense of other methods of construction, and considering that once an at-grade crossing is constructed, federal, state, and railroad funding may be available to construct an underpass if it is found to be feasible and appropriate, and for other good and sufficient reasons. * * *"
 {¶ 61} We agree. Appellee presented competent, credible evidence that the proposed at-grade crossing is safe and reasonably required.
 {¶ 62} Again, due to the gridlock which causes hundreds of accidents each year, three independent consultants, NOACA, URS, and CT confirmed the need for traffic improvements and an additional north/south grade crossing. It was determined that an underpass was not physically or economically feasible, and that an at-grade crossing be constructed to protect the health, safety, and welfare of appellee's residents.[5]
Appellee does not have the financial resources needed to construct a grade separation structure, which would cost many millions of dollars more than the at-grade proposal.
 {¶ 63} CT's updated study indicated that the Plaza Connector would help alleviate traffic congestion, improve traffic flow, reduce both accident rates and the millions of dollars expended by appellee's motorists as a result of those accidents, excess travel costs, delay damages, and fuel expenses, as well as improve police, fire, and EMS response times. Appellee's proposal evidences that it has offered to equip the Plaza Connector crossing with the highest level of safety devices possible.
 {¶ 64} Former Federal Railroad Administrator, Carmichael, indicated that an increase in traffic congestion equals an increase in both accidents and wear and tear on the roadway system. Kirkland, ORDC's manager of safety operations, stated that the state of Ohio will implement four-quadrant gates in the future because they are better than other available alternatives and are an improvement over the standard two-quadrant gates. Kirtland testified that appellee's proposal is reasonable and feasible. Gilbert, NS's system manager, and Young, chairman of NS's grade crossing safety and trespass section, indicated positive aspects regarding four-quadrant gates. Engineer Eck testified that the proposed at-grade crossing could be designed to be reasonably safe. Also, Burger, who has been involved in the railroad industry for about forty years, opined that the construction of the proposed grade crossing would have no significant impact on NS's and appellant's train operations.
 {¶ 65} The evidence establishes that four-quadrant gates and median barriers are the highest form of safety devices available for grade crossings and have been proven to drastically reduce crossing accidents. Again, pursuant to the Federal Railroad Administration's nationwide study, four-quadrant gates and median barriers have an effectiveness rate of ninety-two percent. Also, four-quadrant gates and median barriers together reduce driver violations of traffic signals and safety devices at grade crossings by ninety-eight percent.
 {¶ 66} Thus, the trial court's decision pursuant to R.C. 4957.31 is supported by the weight of the evidence. Based on the totality of the circumstances, there is clear and convincing evidence that the at-grade crossing is safe and reasonably required. See, generally, Fostoria,
supra. Appellant's first, second, and third issues are not well-taken. Appellant's fifth assignment of error is without merit.
 {¶ 67} In its sixth assignment of error, appellant maintains that the trial court erred in holding that the new crossing would not unnecessarily interfere with its operations. Appellant contends that even if it bore the burden of proving the crossing would unreasonably interfere with its operations, the trial court erred in holding that no such interference would occur where the undisputed evidence established that appellant must alter its operations or expend capital in order to accommodate the crossing.
 {¶ 68} As previously stated in appellant's first assignment of error, although the trial court improperly placed the burden on appellant to prove that the proposed crossing would not unnecessarily interfere with its operations or with the reasonable use of its property under R.C.719.01(A), the trial court's substantive analysis and the evidence support the ultimate conclusion reached by the court. Also, as discussed in appellant's second assignment of error, the trial court properly analyzed the safety issue of the proposed crossing under R.C. 4957.31, and placed the burden of proof on appellee. Thus, although the trial court improperly placed the burden on appellant with respect to R.C.719.01(A), it properly reviewed the safety of the at-grade crossing and determined that construction was reasonably required under R.C. 4957.31. Therefore, we reiterate that the trial court's misallocation of the burden of proof with respect to R.C. 719.01(A) was harmless error.
 {¶ 69} The trial court properly reviewed the safety of the at-grade crossing in determining that there would not be any unnecessary interference with appellant's operations. In addition, as fully discussed in appellant's fifth assignment of error, the trial court's decision pursuant to R.C. 4957.31 is supported by the weight of the evidence. Based on the totality of the circumstances, there is clear and convincing evidence that the at-grade crossing is safe and reasonably required. See, generally, Fostoria, supra. Again, Burger, who has been involved in the railroad industry for about forty years, stated that the construction of the proposed grade crossing would have no significant impact on NS's and appellant's train operations.
 {¶ 70} Based on the evidence presented, the trial court properly determined that the proposed crossing would not unnecessarily interfere with appellant's train operations or the reasonable use of its property. Appellee proved by clear and convincing evidence that the proposed crossing is reasonably required to accommodate the public under R.C.4957.31. As such, appellant's contention that the crossing will unnecessarily interfere with appellant's operations is not well-taken. Appellant's sixth assignment of error is without merit.
 {¶ 71} In its seventh assignment of error, appellant alleges that the trial court erred in holding that federal law does not preempt appellee's petition. Appellant presents two issues. In its first issue, appellant argues that appellee's petition is barred by the preemption provisions of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") because the imposition of a crossing constitutes impermissible economic regulation of railroad operations. In its second issue, appellant contends that the doctrines of judicial or collateral estoppel do not preclude appellant from presenting arguments regarding the applicability of the federal preemption defense.
 {¶ 72} "As a general rule, preemption of the states' traditional police power by the federal statute is not favored." Wheeling Lake ErieRailway Co. v. Pennsylvania Public Utility Comm. (2001), 778 A.2d 785,791. "It has been consistently held that the states have the traditional police power reserved by the Constitution to regulate the public safety of the rail-highway grade crossings and allocate the costs of constructing, maintaining and improving such crossings." Id.
 {¶ 73} The ICCTA was created by Congress to decrease regulatory controls over the railroad industry and has been interpreted as preempting state law where the law at issue requires the railroad to undergo substantial capital improvements. CSX Transp., Inc. v. Plymouth
(E.D. Mich. 2000), 92 F.Supp.2d 643, 659.
 {¶ 74} "Collateral estoppel, an aspect of res judicata, prevents a question that has been actually and necessarily determined by a court of competent jurisdiction in a first cause of action from being relitigated between the same parties or their privies in a second, different cause of action." State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty.Bd. of Elections (1991), 60 Ohio St.3d 44, 46, citing Goodson v.McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193, 195. See, also,Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd. (1998),81 Ohio St.3d 392, 395.
 {¶ 75} "The doctrine of judicial estoppel prevents a litigant who has successfully taken a position in one action from taking a contradictory position in a subsequent action." Stanley v. Miamisburg (Jan. 28, 2000), 2d Dist. No. 17912, 2000 Ohio App. LEXIS 205, at 11, citing Scioto Mem.Hosp. Assn., Inc. v. Price Waterhouse (1996), 74 Ohio St.3d 474, 481.
 {¶ 76} In this case, appellant argued before the Surface Transportation Board ("STB") that the instant grade crossing issue did not provide a reasoned basis for intervention by the STB, but rather should be decided by the local state court. The STB accepted appellant's arguments and determined that this matter was properly in the state court system. Appellant now alleges that R.C. 4957.31 is federally preempted by the ICCTA, the federal statute which the STB has exclusive jurisdiction to enforce.
 {¶ 77} We agree with the trial court that appellant's contention here is fatally inconsistent with its earlier argument to the STB that the trial court had jurisdiction over appellee's petition and that the STB lacked jurisdiction. We also agree with the trial court that appellant has waived its arguments that R.C. 4957.31 is federally preempted by the ICCTA because of its previous arguments to the STB, and because it argued to the trial court that the trial court had jurisdiction to consider appellee's petitions and that the STB lacked jurisdiction. Thus, appellant is collaterally and judicially estopped from arguing that R.C. 4957.31 is federally preempted by the ICCTA.
 {¶ 78} Even if res judicata and/or collateral estoppel do not apply, the evidence presented shows that the installation of the proposed crossing will not require appellant to undergo any substantial capital improvements, will only have an insignificant impact on its train operations, and will not unnecessarily interfere with the reasonable use of its property. Therefore, we agree with the trial court that R.C. 4957.31
is not preempted by the ICCTA. Appellant's first and second issues are not well-taken. Appellant's seventh assignment of error is without merit.
 {¶ 79} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] Appellant was named as a defendant in Case No. 00 CV 001662, and NS was named as a defendant in Case No. 00 CV 001663. The trial court consolidated the two actions on September 21, 2001.
[2] At the beginning of trial, the parties stipulated that the trial court would hear and decide all issues raised by appellee's petitions, except the question regarding compensation, which was to be heard, if necessary, in a later proceeding.
[3] The trial court noted in its May 28, 2003 judgment entry that a four-quadrant gate crossing is located in Putnam County, Ohio, and that they are not experimental devices despite Kirkland's testimony to the contrary.
[4] On October 14, 2003, this court determined that the trial court's judgment entry was a final appealable order. Further, we stated that R.C. 163.01 is not applicable to the instant matter.
[5] None of the parties submitted any arguments or evidence as to whether an overpass should have been considered as an additional alternative.